Ruffin, C. J.
 

 Many witnesses have been examined, chiefly to the value of the negroes in 1823, and there is great disparity in the respective estimates. The evidence appears to the Court, rather to preponderate in establishing the sum mentioned in the bill of sale to be a fair price. Taking that to be so, and finding it proved, that upon the settlement made, when the deed was given, all the old bonds were given up to the plaintiff, and no new one taken ; that, shortly before the 1st of November 1S23, the plaintiff gave up the negroes and the defendant has held them over since, claiming them as his own and without an intimation, during the whole period, from the plaintiff of a claim to them, though residing with his children and other relatives near the defendant, and in the possession of ordinary faculties; and that, in fact, during the year 1823, the plaintiff was arrested by another creditor and took the oath of insolvency, and was discharged without giving in a schedule ; the probability
 
 *101
 
 might not be deemed slight, that the account is true, which the answer gives of the character of the transaction, as intended by the parties at the time. But the Court does not weigh that probability, as, perhaps.it could not be allowed to control the explicit terms of the writing, reserving a right to pay the money and thereby avoid the conveyance. Besides, it is not necessary, for the fur. ther reason, that, admitting the intention to reserve the right to redeem, we think it clear, both that it is to be presumed as a matter of law, and that it is established as a matter oí fact, that the plaintiff abandoned his right of redemption. By the act of 1826. the presumption arose upon the lapse of thirteen years after the day of forfeiture ; and here it was nearly eighteen to the filing of the bill, and the delay is insisted on in the answer. The plaintiff endeavours to rebut the presumption by the state of his mind and memory and his poverty. But he fails to establish any such defect as the former; and, clearly, his poverty has no bearing in the case, as the plaintiff does not assign that as the cause of his
 
 laches,
 
 but only says, that it would have prevented him from redeeming, if he had known that he had the right. But the truth is, that his poverty could have had no influence on his conduct, as he had all the time just the same means of suing as he had at last, and, indeed, might have sued in
 
 forma pauperis :
 
 and it is, now, the usual course of the Court not to require the mortgagor to pay the debt and the costs by a given day or that his bill shall stand dismissed, but, in default of payment, to order a sale of the subject, and out of the proceeds discharge the incumbrance, and then the surplus belongs to the. mortgagor. We need not say what effect mental distress and decay of memory, combined with poverty, would have had on the presumption, if they had been established. It may be remarked, however, that, in order to have any, they must be established beyond all doubt; for the statute is one of repos®, and its
 
 *102
 
 provisions are to be fairly carried out. Indeed, the obvious purpose of our law is to insist peremptorily on diligence in redeeming personalty, not only in point of policy for the sake of repose, but as an act of good faith towards mortgagees and those claiming under them; as is evinced by the act of 1830, which makes the failure to file a bill for the very short space of two years after the forfeiture, a bar forever. There is nothing to impair the statutory presumption of abandonment, but much to sustain it, as the actual truth in this case. It is not usual for a mortgagee to wish, nor the mortgagor to consent, that the former should take possession, when there is an intention and expectation to redeem — especially of such a family of slaves as this, which were undoubedly chargeable and troublesome. When, therefore, the plaintiffbroke up housekeeping on the death of his wife, and, leaving the negroes for the defendant, went to live with his children, no one of whom would, or was asked by him, to advance the money, and the plaintiff cotemporaneously obtained adis charge as an insolvent debtor, without taking any notice of a property or interest in these negroes ; and the defendant then took possession ami held it quietly for eighteen years under the eye of the plaintiff, who made no question of its rightfulness ; and then no security wras taken for the money but the conveyance ; the mind, under such circumstances, cannot fail to be strongly impressed with the belief, that the price paid, if not the full value, was about it — especially when there is corresponding proof on that point — and that the mortgagor had, consequently, little or no interest in redeeming, and in fact then abandoned the right. Such are our conclusions both upon thejmatter of law and the facts in this case ; and therefore the bill must be dismissed with costs.
 

 Per Curiam.
 

 Decree accordingly.